Robert DOLE, Appellant,

v.

Jimmy CARTER, President of the United States of America, Appellee.

No. 77–2117.

United States Court of Appeals, Tenth Circuit.

Dec. 31, 1977.

Kenneth J. Reilly and Kenneth E. Holm of Boddington & Brown, Kansas City, Kan., for appellant.

Michael Kimmel of the Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., for appellee.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

PER CURIAM.

This matter is before the court on appellant's motion for an injunction pending appeal. See Rule 8(a), Federal Rules of Appellate Procedure. The court has expedited the hearing and has considered the record, the briefs, and the oral arguments of counsel. The motion is denied.

Plaintiff-appellant Dole is a United States Senator. Defendant-appellee Carter is the President of the United States. The controversy relates to the crown of St. Stephen and related regalia. The crown is a symbol of Hungarian national identity and has played an important role in Hungarian history for many centuries. At the end of hostilities in World War II, the crown was voluntarily turned over to armed forces of the United States by a Hungarian emissary and is presently held by the United States. The parties seem to agree that the crown belongs to the Hungarian people. No claim is made that the crown is the property of the United States.

On December 13, 1977, the American Ambassador to Hungary wrote the Hungarian Minister of Foreign Affairs saying that President Carter had determined that "it is

appropriate and fitting" that the crown be returned to the people of Hungary at a ceremony to be held in Budapest. The letter stated that certain arrangements had been decided by the two governments and specified those arrangements. The letter asked confirmation "of the arrangements as specified above." By letter dated the same day, the Hungarian Minister confirmed the arrangements. The ceremony is to be held on January 6–7, 1978.

On December 23, 1977, Senator Dole filed in the United States District Court for the District of Kansas, a complaint for declaratory and injunctive relief. He claims that the understanding for the return of the crown is a bilateral treaty between the United States and Hungary which, under Art. II, Sec. 2, cl. 2 of the Constitution of the United States, requires the advice and consent of the Senate.

After a hearing at which it gave consideration to affidavits and documents offered by the parties, the court on December 30 denied Senator Dole's request for a preliminary injunction. An appeal to this court was filed the same day.

An application to enjoin the return of the crown was denied by the United States District Court for the District of Columbia on December 18, 1977. See Civil Action No. 77–2069, *Curtis v. Carter*. The court of appeals summarily affirmed on December 19, 1977. See No. 77–2105, *Curtis v. Carter*, D.C.Cir. In that case reliance was had on Art. IV, Sec. 3, cl. 2 of the Constitution relating to the power of Congress over the property of the United States and apparently no consideration was given to the treaty question. In the case before us no claim is made that the crown is the property of the United States.

The district court held that the understanding between the United States and Hungary was an executive agreement not within the purview of Art. II, Sec. 2, cl. 2 of the Constitution. The court specifically declined to consider matters relating to standing or jurisdiction.

■ Art. III. Sec. 2, cl. 1 of the Constitution provides that the judicial power extends to cases and controversies. Jurisdiction depends on whether a justiciable controversy is presented. The controversy here is whether the understanding between the United States and Hungary is a treaty or an executive agreement not requiring Senate action. We must determine whether the dispute, having its origin in the field of foreign relations, presents a nonjusticiable political question. In discussing political questions arising in the context of foreign relations, the Supreme Court said in *Baker v. Carr*, 369 U.S. 186, 211–212, 82 S.Ct. 691, 707, 7 L.Ed.2d 663:

> "Our cases in this field [foreign relations] seem invariably to show a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action."

In *United States v. Bishop*, 10 Cir., 555 F.2d 771, 776–777, we considered *Baker v. Carr* and in the circumstances of that case held that the issue presented, sufficiency of notice, was susceptible to judicial handling. In the case at bar we conclude that the controversy is not so susceptible.

■ The action of the President is to return to the people of Hungary property which belongs to them. The situation is one which "uniquely demand[s] single-voiced statement of the Government's views." *Baker v. Carr*, 369 U.S. at 211, 82 S.Ct. at 707. We are aware of no "judicially discoverable and manageable standards for resolving [the issue]." We have no way of ascertaining the interest of the United States, or of its people, in the controversy. The President has decided that our foreign relations are best served by the return of the crown. We decline to enter into any controversy relating to distinctions which may be drawn between executive agreements and treaties. We say only that on the facts before us we find no justiciable controversy.

■ We realize that Senator Dole contends that the President's action violates the Paris Peace Treaty of 1947. On the record presented to us we find no violation of that treaty.

The motion for injunction pending appeal is denied. We note the statement in the order of the trial court that defense counsel have assured that the President will retain possession of the crown until such time as the court could hear the motion for a preliminary injunction. We assume that this assurance will carry over to permit consideration by the Supreme Court, or a Justice thereof, of this order denying an injunction pending appeal. No petition for rehearing or reconsideration of the motion for an injunction pending appeal will be considered by this court.